**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ETHOSENERGY LIGHT TURBINES, LLC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 4:19-cv-1738** |
| | ) | |
| **MATTHEW BARRON and TIMOTHY KELTON,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff EthosEnergy Light Turbines, LLC, ("EthosEnergy") complains against defendants Matthew Barron and Tim Kelton, as follows:

## I. PARTIES

1. Plaintiff EthosEnergy is a Louisiana limited liability company with its principal place of business in in Houston, Texas.

2. Defendant Matthew Barron ("Barron") is a citizen of Texas, who is domiciled in Harris County, Texas.

3. Defendant Timothy Kelton ("Kelton") is a citizen of Mississippi. Defendant Kelton previously worked for EthosEnergy and traveled to Texas in connection with his work on multiple occasions, including that Kelton executed the contracts which are the subject of this suit in Houston, Texas.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §1331 and 1367. The court has federal question jurisdiction over Claim 1, which arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The court has supplemental jurisdiction over Claims 2 through 5, which are so related to Claim 1 that they form part of the same case or controversy under Article III of the United States Constitution.

5. The Court has personal jurisdiction over each defendant.

6. Venue is proper under 28 U.S.C. § 1391(b) (2) or under 28 U.S.C. §1391(b)(3).

## III. FACTUAL ALLEGATIONS

7. EthosEnergy is an independent service provider of rotating equipment services and solutions to the power, oil & gas, and industrial markets, including power plant engineering, procurement and construction; facility operations and maintenance; repair, overhaul, optimization and upgrade of gas, steam turbines, pumps, compressors and other high-speed rotating equipment.

8. Defendants Barron and Kelton are former EthosEnergy employees, now working for EthosEnergy's direct competitor Gas Turbine Applications, ("GTA"), which is owned by Turbine Efficiency Limited ("Turbine Efficiency").

9. Turbine Efficiency is an independent service provider for Siemens industrial gas turbines, including maintenance, repair, overhaul and testing. Turbine Efficiency operates from the United Kingdom, with offices in Aberdeen, Dubai and Houston, and resident Field Service Engineers in various European locations.

10. By no later than November 2018, Turbine Efficiency Limited planned to acquire a U.S. subsidiary to compete with EthosEnergy, particularly in the Gulf of Mexico.

11. Turbine Efficiency undertook efforts to recruit EthosEnergy's employees for the U.S. subsidiary, including EthosEnergy's Global Head of Sales Graham McKirdy, who resigned his employment with EthosEnergy to work for Turbine Efficiency.

12. On or around December 7, 2018, Turbine Efficiency announced the acquisition of GTA, a Texas corporation, which is an independent service provider of overhaul, repair and testing services, primarily operating within the upstream and midstream sectors and primarily focused on the Saturn and Centaur industrial gas turbines (Solar® Turbines products).

13. Thereafter, Turbine Efficiency and GTA undertook efforts to recruit EthosEnergy's employees to leave EthosEnergy and join GTA, including Barron and Kelton.

14. EthosEnergy and GTA are direct competitors in a specialized and highly competitive worldwide market.

**Barron's Employment with EthosEnergy and His Contractual Obligations**

15. Barron was employed by Ethos Energy from June 2016 through March 2019 first as a Sales Associate and then as a Regional Sales Manager. In that capacity, he called on EthosEnergy's customers and prospective customers to solicit sales and helped develop EthosEnergy's sales strategy for the Gulf of Mexico.

16. In connection with the start of Barron's employment with EthosEnergy, on June 14, 2016, Barron and EthosEnergy entered an "Intellectual Property Agreement" ("the IP Agreement"), which is attached hereto as Exhibit A.

**a.** Barron agreed that during or after his employment he would not publish or disclose any of EthosEnergy's proprietary information, defined as "all technical and non-technical information including, but not limited to, design criteria, cost and pricing information, operational data, other financial information, customer information, product test and repair data, product specifications, technology, materials, products and processes, which may be incorporated in drawings, prints, formulas, specifications, compilations of data, narrative descriptions, electronic

form and oral presentations, and other information which a party treats as confidential, proprietary or a trade secret."

**b.** Barron specifically agreed that upon the termination of his employment, he would "deliver to or leave with [EthosEnergy] all written and other materials containing Proprietary Information of [EthosEnergy]."

**c.** Barron also agreed not to disclose to EthosEnergy or otherwise use any third-party proprietary information of his prior employers or EthosEnergy's competitors.

17. On June 20, 2016, Barron agreed to be bound by EthosEnergy's IT and Business Ethics Policies, which are attached hereto as Exhibits B and C). The Business Ethics Policy ("Ethics Agreement"), defined confidential information as "technical information concerning products and services, manufacturing and development process information, engineering designs, drawings and layouts, software code, know-how, pending patent applications, invention disclosure statements and the like;" as well as non-public business information such as non-public financial information, employee information (including email lists), analyses, forecasts, customer and supplier lists, strategic and operating plans, corporate organisation plans, audit materials or reports, legal opinions and advice, information regarding litigation or potential litigation, proposed transactions, and the like."

**a.** Barron agreed to "protect confidential information, proprietary information and trade secrets in [his] possession from unauthorized use or disclosure, including any confidential information relating to customers, supplies, contractors, employees and other third parties."

**b.** Barron agreed that he would "not disclose to third parties any non-public information."

18. During his employment with EthosEnergy, Barron was exposed to a significant amount of EthosEnergy's trade secrets and confidential and proprietary business information, including, but not limited to, customer names and lists, pricing, including nets and margins, project leads, customer history, technical information about customers' turbines and equipment, contracts and service agreements with vendors and customers, quality procedures, (collectively "confidential information"). Said confidential information was developed through extensive time, labor, skill and money; it has independent value to EthosEnergy, is not generally known or ascertainable by its competitors, and is critical to EthosEnergy's ability to maintain its competitive position in the industry. EthosEnergy would be at a substantial competitive disadvantage if the confidential and proprietary business information and trade secrets known by Barron were disclosed to a competitor.

**Kelton's Employment with EthosEnergy and His Contractual Obligations**

19. Kelton was employed by EthosEnergy from February 2018 through April 2019 as a Field Service Representative. In that capacity, he performed service work for EthosEnergy's customers, in coordination with other Field Service Representatives and Field Service Engineers.

20. In connection with the start of Kelton's employment with EthosEnergy, on January 31, 2018, Kelton and EthosEnergy entered an "Intellectual Property Agreement" ("the IP Agreement"), which is attached hereto as Exhibit D.

**a.** Kelton agreed that during or after his employment he would not publish or disclose any of EthosEnergy's proprietary information, defined as "all technical and non-technical information including, but not limited to, design criteria, cost and pricing information, operational data, other financial information, customer information, product test and repair data, product specifications, technology, materials, products and processes, which may be incorporated in drawings, prints, formulas, specifications, compilations of data, narrative descriptions, electronic

form and oral presentations, and other information which a party treats as confidential, proprietary or a trade secret."

**b.** Kelton specifically agreed that upon the termination of his employment, he would "deliver to or leave with [EthosEnergy] all written and other materials containing Proprietary Information of [EthosEnergy].

**c.** Kelton also agreed not to disclose to EthosEnergy or otherwise use any third-party proprietary information of his prior employers or EthosEnergy's competitors.

21. On February 20, 2018, Kelton and EthosEnergy entered an "Employee Confidentiality Agreement" ("Confidentiality Agreement"), which is attached hereto as Exhibit E.

**a.** Kelton acknowledged and agreed that he held a fiduciary capacity with EthosEnergy, and agreed not to "reveal, communicate or divulge during [Kelton's] employment by [EthosEnergy] or thereafter . . . any information, knowledge, data, or records, whether written or otherwise, of whatsoever kind or nature not generally available to the public, including but not limited to any information which relates to customer names and client information, [EthosEnergy's] operations, policies or procedures, personnel matters, financial information, [EthosEnergy]

contracts, engineering or technical information (including but not limited to drawings, manuals, processes and software) or other information or documents of a confidential nature relating to the ownership or operation of [EthosEnergy] or concerning any officer, director, employee, agent, supplier or customer of [EthosEnergy]."

**b.** Kelton agreed that he would not "copy, duplicate, transcribe or in any way reproduce any [EthosEnergy] documents or objects or remove them from [EthosEnergy's] office or facilities or use any information concerning them except for [EthosEnergy's] sole benefit, either during [Kelton's] employment or thereafter.

**c.** Kelton agreed that he would "deliver all of the documents and objects referred to . . . that may be in [his] possession to [EthosEnergy] upon the termination of [Kelton's] employment or at any time upon [EthosEnergy's] request, together with [Kelton's] signed statement of compliance with respect to delivery of all such documents and objects.

**d.** Kelton agreed not to use or disclose any confidential or proprietary information or any trade secrets or other intellectual property of another party (including any of Employee's previous employers).

**e.** Kelton further agreed that irreparable injury will result to [EthosEnergy] in the event of a breach or threat of breach of any provision(s) of this Agreement. Therefore, [Kelton] agrees that in the event of a breach or threat of breach of any provision(s) of this Agreement, [EthosEnergy] shall be entitled to, in addition to other remedies and damages available, an injunction to restrain any such breach or threat of breach by [Kelton] and all persons acting for or in concert with him/her.

22. During his employment with EthosEnergy, Kelton was exposed to a significant amount of EthosEnergy's trade secrets and confidential and proprietary business information, including, but not limited to, customer names and lists, project leads, customer history, technical information about customers' turbines and equipment, contracts and service agreements with vendors and customers, quality procedures, (collectively "confidential information"). Said confidential information was developed through extensive time, labor, skill and money. It has independent value to EthosEnergy, is not generally known or ascertainable by its competitors, and is critical to EthosEnergy's ability to maintain its competitive position in the industry. EthosEnergy would be at a substantial competitive disadvantage if the confidential and proprietary business information and trade secrets known by Kelton were disclosed to a competitor.

## Barron's and Kelton's Use of Computers at EthosEnergy

23. Throughout the employment of Barron and Kelton, EthosEnergy maintained one or more computers and/or computer systems which were used in or affecting interstate or foreign commerce or communication, access to which is controlled via passwords issued to employees.

24. EthosEnergy gave Barron access to said computer(s) and/or computer systems for the purpose of enabling him to perform his duties for EthosEnergy consistent with the terms and obligations of EthosEnergy's policies and Barron's agreements.

25. EthosEnergy gave Kelton access to said computer(s) and/or computer systems for the purpose of enabling him to perform his duties as for EthosEnergy, consistent with the terms and obligations of EthosEnergy's polices and his agreements.

## Barron's Employment with GTA

26. On information and belief, Turbine Efficiency and GTA began recruiting Barron to leave his employment with EthosEnergy in January or February of 2019.

27. Barron resigned his employment with EthosEnergy on March 11, 2019.

28. On April 10, 2019, EthosEnergy Senior Counsel Amber Akers wrote Barron to remind him of his continued obligation to maintain the

confidentiality of EthosEnergy's proprietary and confidential information, specifically including information maintained on EthosEnergy's computer systems, which is attached here to as Exhibit F.

29. Thereafter, a post-employment forensic evaluation of Barron's computer and email revealed that he emailed EthosEnergy's confidential and proprietary information to his personal Yahoo email account, and that he removed a USB drive containing highly confidential and proprietary customer and sales information.

30. EthosEnergy's outside counsel wrote Barron on April 25, 2019, regarding the results of the forensic examination and demanding that he cease all access to and/or utilization and disclosure of such information and immediately return the information, as well as any and all other proprietary and confidential information to EthosEnergy, which is attached hereto as Exhibit G.

31. Barron replied to the April 25 letter through an attorney for Turbine Efficiency that he had deleted the email and "disposed of" the USB drive.

32. EthosEnergy's outside counsel requested documentation of the deletion and disposal. This request is attached hereto as Exhibit H.

33. As of the date of filing this complaint, Barron has not provided any documentation that he in fact deleted the email and disposed of the USB drive.

34. On information and belief Barron assisted Turbine Efficiency/GTA in soliciting Kelton and other EthosEnergy employees to join Turbine Efficiency/GTA.

35. On information and belief, GTA is currently performing or scheduled to perform work for one or more of the customers Barron formerly called on for EthosEnergy, including customers Kelton serviced for EthosEnergy.

**Kelton's Employment with GTA**

36. On information and belief, Barron and GTA began recruiting Kelton to leave his employment with EthosEnergy in February or March of 2019.

37. Kelton resigned his employment with EthosEnergy on April 18, 2019.

38. Thereafter, a post-employment forensic evaluation of Kelton's computer and email revealed that he emailed EthosEnergy's confidential and proprietary information to his personal Yahoo email account, including emails with one or more customers regarding projects which were then underway.

39. EthosEnergy's outside counsel wrote Kelton on May 3, 2019, regarding the results of the forensic examination, demanding that "cease all access to and/or utilization and disclosure of such information and immediately return the information, as well as any and all other proprietary

and confidential information to EthosEnergy." This correspondence is attached hereto as Exhibit I.

40. Kelton has not returned the information.

41. On information and belief, Kelton is currently performing or scheduled to perform work for one or more of the EthosEnergy customers whose information he emailed to himself shortly before leaving employment with EthosEnergy.

**Recruitment of EthosEnergy's Employees by Turbine Efficiency, GTA, Barron and Kelton**

42. Barron and Kelton have recruited and attempted to recruit numerous EthosEnergy employees.

43. On information and belief, Turbine Efficiency and GTA have not advertised generally for employees, but instead have targeted EthosEnergy's Sales Representatives and Field Service Representatives and production employees.

44. Turbine Efficiency and GTA have made job offers to EthosEnergy's employees, apparently drawing on EthosEnergy's confidential employee and salary information.

## VI. CLAIMS

### Claim 1: Violation of Computer Fraud and Abuse Act, 18 USC §1030(g)

45. EthosEnergy incorporates the preceding paragraphs herein.

46. In April 2019, EthosEnergy learned that Barron and Kelton had misappropriated EthosEnergy’s confidential and proprietary business information and trade secrets, including information stored electronically on its protected computers.

47. EthosEnergy conducted an investigation and damage assessment, which included conducting forensics examination of the protected computers which had been used by Barron and Kelton, at considerable cost and expense, and causing an interruption in service for those computers.

48. EthosEnergy’s investigation determined that Barron and Kelton had accessed its protected computer(s) and/or computer system without authorization or exceeding their authorization, and had obtained EthosEnergy's electronically stored information, including its confidential and proprietary business information, intellectual property, and trade secrets.

49. As a result of these activities, EthosEnergy altered its policies and procedures with regard to computers and equipment following the departure of certain employees.

50. The investigation and policy revisions required EthosEnergy's executives, managers and information technology professionals to spend many hours of valuable time away from day-to-day responsibilities.

51. EthosEnergy's reasonable costs for responding to the offense, including conducting a damage assessment, and restoring its computer(s) and computer system to their condition prior to the offense, and other consequential damages, and have exceeded $5,000 from March 10, 2019, to the date of filing this complaint.

WHEREFORE, EthosEnergy seeks actual and statutory damages, costs, interest, attorneys' fees, and a temporary restraining order, preliminary injunction and permanent injunction requiring the return of, and enjoining further use of, its confidential and proprietary business information and trade secrets which were stored electronically on its protected computer(s).

## Claim 2: Breach of Contract Against Barron

52. EthosEnergy incorporates the preceding paragraphs herein.

53. The IP Agreement and Ethics Agreement are valid and enforceable contracts. EthosEnergy is a proper party to sue for breach of the Agreements.

54. EthosEnergy has performed each obligation and condition required of it under the Agreements.

55. Barron has violated the Agreements by (1) accessing EthosEnergy’s protected computer(s) without authorization or exceeding his authorization to obtain electronically stored information from EthosEnergy’s protected computer(s), (2) misappropriating EthosEnergy’s confidential and proprietary business information and trade secrets; (3) failing and refusing to return EthosEnergy’s confidential and proprietary business information and trade secrets when he left EthosEnergy’s employment; and/or (4) disclosing EthosEnergy’s valuable confidential and proprietary business information and trade secrets.

56. EthosEnergy has suffered damages as a direct result of Barron’s breach, including damages to its business expectancies and goodwill, loss of customers, profits, market share, confidential and proprietary business information and trade secrets, as well as attorneys’ fees, expenses and court costs, and other damages in an amount to be determined at trial.

WHEREFORE, EthosEnergy seeks compensatory damages, costs, interest, attorneys’ fees, and a temporary restraining order, preliminary injunction and permanent injunction requiring the return of and enjoining further use of its confidential and proprietary business information and trade secrets which were stored electronically on its protected computer(s).

**Claim 3: Breach of Contract**
**Against Kelton**

57. EthosEnergy incorporates the preceding paragraphs herein.

58. The IP Agreement and Confidentiality Agreement are valid and enforceable contracts. EthosEnergy is a proper party to sue for breach of the Agreements.

59. EthosEnergy has performed each obligation and condition required of it under the Agreements.

60. Kelton has violated the Agreements by (1) accessing EthosEnergy's protected computer(s) without authorization or exceeding his authorization to obtain electronically stored information from EthosEnergy's protected computer(s), (2) misappropriating EthosEnergy's confidential and proprietary business information and trade secrets; (3) failing and refusing to return EthosEnergy's confidential and proprietary business information and trade secrets when he left EthosEnergy's employment; and/or (4) disclosing EthosEnergy's valuable confidential and proprietary business information and trade secrets.

61. EthosEnergy has suffered damages as a direct result of Kelton's breach, including damages to its business expectancies and goodwill, loss of customers, profits, market share, confidential and proprietary business information and trade secrets, as well as attorneys' fees, expenses and court costs, and other damages in an amount to be determined at trial.

WHEREFORE, EthosEnergy seeks compensatory damages, costs, interest, attorneys' fees, and a temporary restraining order, preliminary injunction and permanent injunction requiring the return of and enjoining further use of its confidential and proprietary business information and trade secrets which were stored electronically on its protected computer(s).

**Claim 4: Unfair Competition by Misappropriation**

62. EthosEnergy incorporates the preceding paragraphs herein.

63. EthosEnergy is the owner of certain confidential and proprietary business information trade secrets, which it has invested considerable time, skill and financial resources to develop and protect.

64. Barron and Kelton acquired such confidential and proprietary business information and trade secrets in the course of their employment with EthosEnergy.

65. During and after their employment with EthosEnergy, Barron owed EthosEnergy contractual and common law duties not to disclose or use EthosEnergy's confidential and proprietary business information and trade secrets.

66. Despite these duties, Barron and Kelton misappropriated and/or used and/or disclosed confidential and proprietary business information and trade secrets belonging to EthosEnergy.

67. Barron and Kelton used and/or disclosed said confidential and proprietary business information and trade secrets to EthosEnergy's

detriment, in violation of their Agreements and confidential relationships with EthosEnergy.

68. By using EthosEnergy's confidential and proprietary business information and trade secrets, Barron and Kelton misappropriated and unlawfully used such information.

69. By using EthosEnergy's confidential and proprietary business information and trade secrets, Barron and Kelton will gain a special advantage in competing with EthosEnergy on behalf of Turbine Efficiency and GTA because defendants will be burdened with little or none of the expense incurred by EthosEnergy.

70. EthosEnergy has suffered and will continue to suffer damages as a result of Barron and Kelton's unfair competition by misappropriation.

71. Barron and Kelton acted intentionally and maliciously.

WHEREFORE, EthosEnergy seeks compensatory and punitive damages, costs, interest, attorneys' fees, and a temporary restraining order, preliminary injunction and permanent injunction requiring the return of and enjoining further use of its confidential and proprietary business information and trade secrets which were stored electronically on its protected computer(s).

## Claim 5: Civil Conspiracy

72. EthosEnergy incorporates the preceding paragraphs herein.

73. Barron, Kelton and various third parties combined to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.

74. Defendants and third parties engaged in a civil conspiracy to steal and misappropriate EthosEnergy's confidential and proprietary business information and trade secrets, including information stored electronically on EthosEnergy's protected computer(s), and to engage in unfair competition by misappropriation, which has or will proximately cause injury to EthosEnergy.

75. As a proximate result of this civil conspiracy, EthosEnergy has or will suffer lost revenue, damage to its business relationships and goodwill, and other damages in an amount to be determined at trial.

76. Defendants acted with malicious intent and/or reckless indifference to EthosEnergy's rights, thereby entitling EthosEnergy to an award of punitive damages.

77. EthosEnergy asks that the Court enjoin the defendants from engaging further in their illegal conspiracy.

WHEREFORE, EthosEnergy seeks compensatory and punitive damages, costs, interest, attorneys' fees, and a temporary restraining order, preliminary injunction and permanent injunction requiring the return of and enjoining further use of its confidential and proprietary business information and trade secrets which were stored electronically on its protected computer(s).

Filed this 10th day of May 2019.

***/s/ Samuel Zurik, III***

Samuel Zurik, III
Federal ID No. 557386
Texas Bar No. 24044397

The Kullman Firm
A Professional Law Corporation

1100 Poydras Street
Suite 1600
New Orleans, LA 70160
Telephone: (504) 524-4162
sz@kullmanlaw.com

**Cecily L. Kaffer**
*pro hac vice* pending

The Kullman Firm
A Professional Law Corporation

Post Office Box 1287
Mobile, Alabama 36633
Telephone: (251) 432-1811
clk@kullmanlaw.com

**Stephen H. Clement**
*pro hac vice* pending

The Kullman Firm
A Professional Law Corporation

1100 Poydras Street
Suite 1600
New Orleans, LA 70160
Telephone: (504) 524-4162
shc@kullmanlaw.com

Attorneys for Plaintiff
EthosEnergy Power Plant Services, LLC

OF COUNSEL:

SAMUEL ZURIK, III
Texas Bar No. Texas Bar No. 24044397
Federal ID No. 557386

The Kullman Firm
A Professional Law Corporation

1100 Poydras Street
Suite 1600
New Orleans, LA 70160
Telephone: (504) 524-4162
sz@kullmanlaw.com

**PLAINTIFF DEMANDS TRIAL BY JURY**

***/s/ Samuel Zurik, III***

Plaintiff will serve Defendants by private process server as follows:

Timothy Kelton
4146 Busy Corner Road
Gloster, MS 39638

And

Matthew Barron
1510 Utah Street
Houston, TX 77007

With a courtesy copy to:

Helen Molloy, Group General Counsel
Turbine Efficiency Limited
Energy House
3 Electric Avenue
Witham St Hughs
Lincoln LN6 9BJ
United Kingdom
helen.molloy@turbineefficiency.com